UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:13-CV-513-JGH


STANLEY WARRANTY, LLC                                                    PLAINTIFF

V.

UNIVERSAL ADMINISTRATORS                                                DEFENDANTS
        SERVICE, INC., *et al*

## MEMORANDUM OPINION AND ORDER

Universal Administrators Service, Inc. ("Universal") and Stanley Warranty, LLC

("Stanley Warranty") are both in the home warranty business.  In December 2011, they signed a

contract (the "Dealer Agreement") whereby Stanley Warranty agreed to sell, and Universal

agreed to administer, a home warranty program (the "Safe Secure Club").  Stanley Warranty

terminated the Dealer Agreement by written notice in April 2013.  Soon afterwards, Gabriel

Collins, once an employee of Universal, began working with Stanley Warranty.[1]  According to

Universal, Stanley Warranty then started its own home warranty program (the "Stanley Safe

Club") to compete with Universal.  This lawsuit followed.

The current motions to dismiss focus upon various close issues of personal jurisdiction

and Federal Rule of Civil Procedure 12(b)(6).  The Court will resolve each in turn.

## I.

This litigation currently involves six parties and 27 causes of action asserted through a

Complaint, a Counterclaim, and a Third Party Complaint.  Four different parties have filed

---

[1] Collins denies that he was ever an "employee" of Stanley Warranty.  (DN 27-4 at ¶ 3.)  Stanley Warranty described Collins as "a former employee of [Universal] and consultant to Stanley Warranty."  (DN 27 at 2.)

motions to dismiss thirteen of these claims. For clarity purposes, the Court will identify all of the parties and claims.

Stanley Warranty initiated this lawsuit with a Complaint against Universal and its Chief Executive Officer, Jack Wainwright, alleging: (1) Fraud; (2) Breach of Contract (as to Universal); (3) Breach of Duty of Good Faith and Fair Dealing; (5) Defamation (as to Wainwright); and (6) Piercing Corporate Veil.[2]

Universal responded with a Counterclaim against Stanley Warranty, asserting ten causes of action: (1) Breach of Contract; (2) Common Law Fraud and Deceit; (3) Defamation; (4) Trademark Infringement; (5) Misappropriation of Trade Secrets; (6) Aiding and Abetting a Breach of Fiduciary Duty—Civil Conspiracy; (7); Tortious Interference with Contract; (8) Breach of Duty of Good Faith and Fair Dealing; (9) Unfair Competition under the Lanham Act; and (10) Deceptive Trade Practices and Unfair Competition.

Universal also filed a Third Party Complaint against Stanley and Margaret Mankovsky, both owners and officers of Stanley Warranty, and Gabriel Collins, the former Universal employee now working with Stanley Warranty, asserting: (1) Breach of Fiduciary Duty (as to Collins); (2) Aiding and Abetting a Breach of Fiduciary Duty—Civil Conspiracy (as to Stanley and Margaret Mankovsky); (3) Misappropriation of Trade Secrets; (4) Tortious Interference with Contract (as to Collins); (5) Tortious Interference with Contract (as to Stanley and Margaret Mankovsky); and (6) Defamation (as to Stanley Mankovsky).

After this back-and-forth flurry of lawsuits, the parties began to question personal jurisdiction and adequacy of the pleadings. Stanley and Margaret Mankovsky filed the first motions to dismiss. They claim: (1) this Court has no personal jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(2); and (2) Universal failed to state a claim upon which relief can be granted,

---

[2] Stanley Warranty's Second Amended Complaint does not include a Count 4. (DN 41.)

pursuant to Fed. R. Civ. P. 12(b)(6), with respect to Count 2 (Aiding and Abetting a Breach of Fiduciary Duty), Count 3 (Misappropriation of Trade Secrets), Count 5 (Tortious Interference with Contract), and Count 6 (Defamation).

Jack Wainwright and Universal also filed motions to dismiss all claims against them under Fed. R. Civ. P. 12(b)(6). Wainwright moved to dismiss: Fraud (Count 1), Defamation (Count 5), and "Piercing Corporate Veil" (Count 6). Universal moved to dismiss: Fraud (Count 1), Breach of Contract (Count 2), and Breach of Duty of Good Faith and Fair Dealing (Count 3).

## II.

The Court first considers Stanley and Margaret Mankovsky's motions to dismiss the following claims from Universal's Third Party Complaint: Aiding and Abetting Breach of Fiduciary Duty (Count 2), Misappropriation of Trade Secrets (Count 3), Tortious Interference with Contract (Count 5), and Defamation (Count 6). All of these claims were copied, almost verbatim, from Universal's Counterclaim against Stanley Warranty. (DN 11, amended at DN 19.) The Mankovskys moved to dismiss pursuant to both (1) Rule 12(b)(2) for lack of personal jurisdiction, and (2) Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Because Universal has not met its burden of establishing a prima facie case of personal jurisdiction over the Mankovskys, the Court need not resolve the second motion.

## A.

The parties' residencies are not in dispute. Stanley Warranty is a New Jersey LLC with its principal place of business in New Jersey. Stanley and Margaret Mankovsky, both owners and operators of Stanley Warranty, are New Jersey residents. Margaret has never been to Kentucky; Stanley has only been to Kentucky once, and he visited in relation to this litigation. Universal is a Kentucky corporation with its principal place of business in Kentucky. Jack

Wainwright, a Kentucky resident, is Universal's CEO. Gabriel Collins, a Kentucky resident, was the office manager for Universal but is now a consultant for Stanley Warranty.

Universal's version of the relevant facts follow. Stanley Warranty and Universal signed the Dealer Agreement whereby Stanley Warranty agreed to sell, and Universal agreed to administer, Universal's home warranty program (the "Safe Secure Club"). This program required Universal to enter various other contracts. For example, Universal contracted with service providers to perform home repairs for Safe Secure Club members and with each customer who purchased a home warranty.

Stanley Warranty eventually terminated the Dealer Agreement. Shortly thereafter, Stanley Warranty started a home warranty program of its own—the Stanley Safe Club. This program directly competes with Universal's Safe Secure Club by providing identical services to the same pool of customers.

The Mankovskys promoted this program by interfering with Universal's contracts. Before Stanley Warranty terminated the Dealer Agreement, the Mankovskys reached out to Collins about coming to work for Stanley Warranty—even arranging for him to travel to New Jersey. They communicated with Collins in Kentucky by phone, mail, and e-mail. Eventually, Collins agreed to work as a "consultant" for Stanley Warranty. In this capacity, Collins shares Universal's confidential information, including customer lists and internal processes.

In addition, Stanley Mankovsky made statements to customers and individuals in the home warranty business implying that Universal was insolvent or no longer in the business of administering home warranty programs. Universal does not state where or when these communications occurred or to whom the communications were directed.

**B.**

A district court has discretion to decide a Rule 12(b)(2) motion to dismiss: (1) solely on written submissions and affidavits, (2) after limited jurisdictional discovery, or (3) after an evidentiary hearing. *See Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989). "[W]here the disputed jurisdictional facts are intimately intertwined with the parties' dispute on the merits, a trial court should not require plaintiff[] to mount proof which would . . . establish . . . [its] right to the relief sought." *Id.* But the "existence of intimately intertwined facts does not relieve the plaintiff of the burden to make a prima facie case for jurisdiction, it only prevents trying the case prior to trial." *Palnik v. Westlake Entm't, Inc.*, 344 F. App'x 249, 253 (6th Cir. 2009). Here, as neither party requested a hearing and Universal was granted four extensions to obtain additional discovery to respond to this motion, the Court decides whether Universal has established its prima facie case based on the pleadings and affidavits alone.

The plaintiff bears the burden of establishing personal jurisdiction. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). When a court decides a Rule 12(b)(2) motion solely on written submissions and affidavits, rather than after an evidentiary hearing, this burden "is 'relatively slight,' and 'the plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal.'" [3] *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007) (citations omitted). At this stage, the court must view the pleadings and affidavits in a light most favorable to the plaintiffs, "and the district court should not weigh 'the controverting assertions of the party seeking dismissal.'" *Id.* (quoting *Theunissen*,

---

[3] In its reply, Stanley Warranty notes that Universal was granted four extensions to obtain discovery in order to respond to this motion. The proposition that the plaintiff's showing must only be prima facie "loses some of its significance . . . where . . . the plaintiff has received all of the discovery it sought with respect to personal jurisdiction and there does not appear to be any real dispute over the facts relating to jurisdiction." *Lexon Ins. Co. v. Devinshire Land Dev., LLC*, 107 F.3d 386, 391 (6th Cir. 1997). Here, however, the circumstances surrounding the extensions are unclear (as Universal changed counsel) and the parties have not yet concluded discovery.

935 F.2d at 1459). Still, the plaintiff may not rest on the bare allegations in its complaint and must "set forth specific facts that support a finding of jurisdiction . . . ." *Kroger Co. v. Malease Foods Corp.*, 437 F.3d 506, 510 (6th Cir. 2006).

A federal district court may exercise jurisdiction over any individual subject to the jurisdiction of the state in which it sits. *Kerry Steel, Inc. v. Paragon Indus.*, 106 F.3d 147, 148 (6th Cir. 1997). In Kentucky, personal jurisdiction requires two separate inquiries[4]: (1) the Kentucky long-arm statute must be satisfied; and (2) exercising jurisdiction over the defendant must comport with federal due process. *See Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 56 (Ky. 2011) (holding that Kentucky's long-arm statute is not co-extensive with federal due process). Universal has failed to meet its burden of establishing that Kentucky's long-arm statute has been satisfied, so the Court does not reach the due process question.

## C.

The Kentucky long-arm statute requires Universal to show (1) the Mankovskys' conduct falls within a statutory category in KRS § 454.210(2)(a), and (2) Universal's claim "arises from" that statutory provision. *Churchill Downs, Inc. v. NLR Entm't, LLC*, 3:14-CV-166-H, 2014 WL 2200674 (W.D. Ky. May 23, 2014) (citing *Caesars*, 336 S.W.3d at 58). In pertinent part, the statute provides that a court may exercise personal jurisdiction over a person "as to a claim arising from the person's":

> (1) Transacting any business in this Commonwealth;
> . . .
> (3) Causing tortious injury by an act or omission in this Commonwealth;
> (4) Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth, provided that the tortious

---

[4] Universal wrongly asserts that "Kentucky's Long-Arm Statute is designed to permit the exercise of personal jurisdiction over nonresident defendants to the fullest extent consistent with federal constitutional requirements of due process." (DN 51 (citing *Texas Am. Bank v. Sayers*, 674 S.W.2d 36, 38 (Ky. App. 1984)).)

> injury occurring in this Commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the Commonwealth.
> . . .
> (9) Making a telephone solicitation, as defined in KRS 367.46951, into the Commonwealth.

Ky. Rev. Stat. § 454.210(2)(a) (West 2013). A claim "arises from" certain conduct when there is a "reasonable and direct nexus" between the conduct causing injury and the defendant's activities in the state. *Caesars*, 336 S.W.3d at 59. The provisions of Kentucky's long-arm statute "should be liberally construed in favor of long-arm jurisdiction," but "their limits upon jurisdiction must be observed as defined." *Id.* at 56.

## 1.

The Court first considers Universal's claims against both Stanley and Margaret Mankovsky for Aiding and Abetting Breach of Fiduciary Duty (Count 2), Misappropriation of Trade Secrets (Count 3), and Tortious Interference with Contract (Count 5). The jurisdictional facts relevant to these claims are related. Universal's Third Party Complaint alleges the Mankovskys called, e-mailed, and mailed Gabriel Collins in Kentucky while he was working with Universal. (DN 13 at ¶ 19.) Universal claims the Mankovskys offered Collins employment while also soliciting various trade secrets and confidential information about Universal's home warranty program. (DN 13 at ¶ 21-27.) Moreover, Universal asserts that the Mankovskys used their relationship with Collins to interfere with Universal's contracts with customers and service providers. (DN 13 at ¶ 64.)

Universal only cites to Section (2)(a)(3), alleging that the Mankovskys committed "an act or omission in this Commonwealth" because the tortious communications occurred between the Mankovskys in New Jersey and Collins in Kentucky. (DN 51 at 2.) Universal did not submit a single affidavit in support of this position and merely refers the Court to the allegations in its

Third Party Complaint.  For the reasons that follow, the Court finds that Universal has not made its prima facie case that this category applies.

In *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 56 (Ky. 2011), the Kentucky Supreme Court held that Kentucky's long-arm statute is not co-extensive with federal due process.  Since then, multiple decisions in this district have rejected that an out-of-state person commits an "act or omission in this Commonwealth" by sending a tortious communication into the state.  In *Perkins v. Bennett*, No. 3:13-CV-695, 2013 WL 6002761 at *6 (W.D. Ky. Nov. 12, 2013), the court ruled that an out-of-state defendant did not commit an "act or omission" in Kentucky where "the alleged tortious acts of fraud and misrepresentation were committed via telephone and email."  *See also Babcock v. Anthony's, LLC*, No. 3:12-CV-307, 2013 WL 6036689 at *6 (W.D. Ky. Nov. 14, 2013) (holding that Section 2(a)(3) did not apply because the defendant "was at all relevant times located in New Jersey and the only alleged tortious allegations were over the phone"); *Barker v. Patrick Collins, Inc.*, No. 3:12CV-372, 2013 WL 3790904 at *6 (W.D. Ky. Jul. 9, 2013) (the plaintiffs' claims of "extortion by telephone" were not "acts" in Kentucky that could trigger Section 2(a)(3)).

The Court finds these rulings persuasive.  The Mankovsky's allegedly tortious communications—initiated from their home state in New Jersey to Collins in Kentucky—were not "act[s] or omission[s] in this Commonwealth" under KRS 454.210(2)(a)(3).  The Court must give effect to each provision of the long-arm statute.  To read Section (2)(a)(3) so broadly would render meaningless Section (2)(a)(4), which applies when one "caus[es] tortious injury in this Commonwealth by an act or omission outside this Commonwealth . . . ."  Ky. Rev. Stat. § 454.210(2)(a)(4) (West 2013).

And Universal has no evidence that Section (2)(a)(4) could apply. Though the Mankovsksys allegedly caused injury in Kentucky by act or omission outside of Kentucky, Universal has not claimed the Mankovskys "regularly do[] or solicit[] business, or engage[] in any other persistent course of conduct, or derive[] substantial revenue from goods used or consumed or services rendered in this Commonwealth." Ky. Rev. Stat. § 454.210(2)(a)(4) (West 2013). After a careful review of the record, the Court concludes that Universal has fallen well short of its burden to establish a prima facie case that this standard could be satisfied.

**2.**

Though Universal has not made the arguments, the Court considers two other provisions: Section (2)(a)(1), which applies when a person is "[t]ransacting any business in this Commonwealth," and Section (2)(a)(9), which applies where a person makes a "telephone solicitation . . . into this Commonwealth." Again, after reviewing the record, it does not appear that Universal has not met its burden that either category applies.

Few cases have interpreted what it means to "transact[] any business in this Commonwealth" under Section (2)(a)(1). *See Churchill Downs*, 2014 WL 2200674 at *6. Here, however, considering only the allegations in Universal's Third Party Complaint, it would stretch the plain language of the statute to conclude that Universal's claims arise from the Mankovskys' transacting of any business in Kentucky. Though the claims are identical to those asserted against Stanley Warranty, at issue here are claims against the Mankovskys individually. And Universal has no evidence concerning the Mankovskys' business transactions in Kentucky.

Similarly, Universal has not made a prima facie case that Section (2)(a)(9) concerning "telephone solicitation" applies. In relevant part, KRS § 367.46951 defines "telephone solicitation" as "a live or recorded communication sent by a telephone . . . for the purpose of . . .

offering an investment, business, or employment opportunity . . . ." Ky. Rev. Stat. §
367.46951(1)(a)(1) (West 2013). While this seems relevant at first glance, the statute also
provides that "telephone solicitation does not mean . . . [a] telephone call to any person with
whom the . . . merchant has a prior or existing business relationship." *Id.* § 367.46951(2)(c).
Moreover, the statue excludes a "telephone call made in response to an express request of a
person called . . . ." *Id.* § 367.46951(2)(a). There is no evidence in the record to support that
Collins did not either (1) have a prior existing business relationship with the Mankvoskys or (2)
request the Mankovskys' phone calls, so this category, too, cannot apply.

### 3.

Universal has also fallen short of establishing its prima facie case as to its defamation
claim (Count 6). Unlike the other three claims, the defamation alleged does not even arise from
the Mankovsksys' contact with Collins in Kentucky. In its Third Party Complaint, Universal
asserts that "Stan, on behalf of himself and Stanley Warranty, has uttered and published false and
derogatory statements impugning the integrity, viability, and continued business existence of
Universal, which statements were made to individuals in the community in which Universal lives
and works." (DN 13, at ¶ 78.) Further, Universal alleges Stan "made statements to individuals
stating, inferring, and implying that Universal was insolvent or no longer in the business of
administering home warranty programs . . . ." (DN 13, at ¶ 79.) Universal's pleading falls well-
short of identifying "specific facts that support a finding of jurisdiction . . . ." *Kroger Co.*, 437
F.3d at 510. To the contrary, Universal's pleadings leave many questions unanswered. What,
exactly, did Stanley Mankovsky say? To whom did he say it? Where and when were these
statements published? By failing to answer these basic questions, Universal has not made a
prima facie case that its defamation claim arises out of Stanley Mankovsky's connection with

one of the statutory categories in the Kentucky long-arm statute. The Mankovskys' motion to dismiss these claims is therefore granted.

## III.

The next matter before the Court is Universal's Rule 12(b)(6) motion to dismiss all claims asserted in Stanley Warranty's Second Amended Complaint: Fraud (Count 1), Breach of Contract (Count 2), and Breach of Duty of Good Faith and Fair Dealing (Count 3). Stanley Warranty subsequently withdrew its claims for Fraud (Count 1) and Breach of Duty of Good Faith and Fair Dealing (Count 3).[5] Thus, all that remains is Universal's motion to dismiss the Breach of Contract claim under Rule 12(b)(6).

To survive dismissal for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). A district court must "(1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett*, 562 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause

---

[5] In its response to Universal's motion to dismiss, Stanley Warranty attempts to convert its claim for Breach of Duty of Good Faith and Fair Dealing into a claim for Unjust Enrichment. (DN 55, at 3.) This is not a proper avenue to amend one's complaint. Stanley Warranty may seek leave to amend its Second Amended Complaint if it determines, after an inquiry reasonable under the circumstances, it has or will likely have evidentiary support for the claim. *See* Fed. R. Civ. P. 11(b).

of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of

'further factual enhancement.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

Universal now alleges Stanley Warranty has not made a plausible argument for breach of

contract.  "Under Kentucky law, in order to recover in any action based on breach of a contract, a

plaintiff must show the existence and the breach of a contractually imposed duty."  *Lenning v.*

*Commercial Union Ins. Co.*, 260 F.3d 574, 482 (6th Cir. 2001) (citing *Strong v. Louisville &*

*Nashville R.R. Co.*, 43 S.W.2d 11, 13 (1931)).  The parties do not dispute that the Dealer

Agreement imposed several duties on both Stanley Warranty and Universal.  Stanley Warranty

has asserted that Universal breached its duties.

The Dealer Agreement required Universal to "investigate, process and adjust claims for

damages to parts . . . and to reimburse and arrange for reimbursement of claims . . . ."  (DN 49-2,

at ¶ 2(c).)  Stanley Warranty asserts that Universal breached this provision in its Second

Amended Complaint: "commencing around summer 2012 Plaintiff became aware that it was

receiving an atypical number of customer complaints about slow or non-existent repair service

and repair reimbursements and shortly thereafter technician (i.e. repair vendor) complaints about

non-payment of customer invoices."  (DN 41, at ¶ 24.)  The Second Amended Complaint also

references Internet complaints as evidence of Universal's failure to comply with this provision.

(DN 41, at ¶ 25.)

As Stanley Warranty has not cited to any specific customer complaints, this is a close

call.  But when the facts are viewed in the light most favorable to Stanley Warranty, the breach

of contract claim is plausible.  The Court accepts as true Stanley Warranty's assertion that it

received customer and technician complaints and became aware of negative reviews concerning

Universal's service on the Internet.  These complaints support Stanley Warranty's overall theory

of the facts: Universal had a duty to investigate, process, and adjust claims; it breached that duty, as evidenced by the customer complaints, so Stanley Warranty terminated the contract. This is a plausible claim, so Universal's motion to dismiss this cause of action is denied.

## IV.

The next matter before the Court arises from Stanley Warranty's Second Amended Complaint against Jack Wainwright, which alleged: Fraud (Count 1), Defamation (Count 5), and Piercing the Corporate Veil (Count 6). Wainwright moved to dismiss all three claims; Stanley Warranty subsequently withdrew Count 1 (Fraud) and Count 5 (Defamation). Thus, the only remaining claim against Wainwright is an action to pierce the corporate veil.

Under Kentucky law, "the doctrine of piercing the corporate veil is recognized as being an equitable remedy, not a cause of action unto itself, which is used as a means of imposing liability." *Hodak v. Madison Capital Mgmt.*, 348 F. App'x 83, 94-95 (6th Cir 2009). Because no real cause of action remains against Wainwright, the claim to pierce the corporate veil must also be dismissed.[6]

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Stanley and Margaret Mankovksy's motion to dismiss Count 2 (Aiding and Abetting a Breach of Fiduciary Duty), Count 3 (Misappropriation of Trade Secrets), Count 5 (Tortious Interference with Contract), and Count 6 (Defamation) is SUSTAINED and all those claims against Stanley and Margaret Mankovsky are DISMISSED WITHOUT PREJUDICE.

---

[6] This ruling does not preclude Stanley Warranty from seeking to pierce the corporate veil if it can first establish Universal's liability on an independent cause of action. This would require Stanley Warranty to overcome the standard outlined in *Inter-Tel Techs., Inc. v. Linn Station Props., LLC*, 360 S.W.3d 152 (Ky. 2012). Stanley Warranty would also need to seek leave to amend its Second Amended Complaint against Universal. While piercing the corporate veil is not a unique cause of action, "[a] theory of liability that the corporate veil should be pierced must be plead in the complaint." *Sudamax Industria e Comercio de Cigarros, Ltda. V. Buttes & Ashes, Inc.*, 516 F. Supp.2d 841, 847 (W.D. Ky. 2007 ) (citing *Morgan v. O'Neil*, 652 S.W.2d 83, 85 (Ky. 1983)).

IT IS FURTHER ORDERED that Universal Administrators Service, Inc.'s motion to dismiss Count 1 (Fraud) and Count 3 (Breach of Duty of Good Faith and Fair Dealing) is SUSTAINED, and those Counts are DISMISSED WITH PREJUDICE. Universal's motion to dismiss Count 2 (Breach of Contract) is DENIED.

IT IS FURTHER ORDERED that Jack Wainwright's motion to dismiss Count 1 (Fraud), Count 5 (Defamation), and Count 6 (Piercing Corporate Veil) is SUSTAINED and all claims against Jack Wainwright are DISMISSED WITH PREJUDICE.

cc:     Counsel of Record